## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| DARYL GANDY,<br><br>               Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC, and TRANS UNION LLC,<br>               Defendants. | **Case No.: 2:25-cv-11562**<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>**FCRA, 15 U.S.C. § 1681** *et seq.* |

Plaintiff Daryl Gandy ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Equifax Information Services, LLC ("Equifax") and Defendant Trans Union LLC ("Trans Union") (collectively "Defendants").

## I.    INTRODUCTION

1.      Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the Defendants. Plaintiff contends Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's "consumer reports" as defined in 15 U.S.C. § 1681a(d) and consequently reported inaccurate information about Plaintiff. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer

1

reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## II.    JURISDICTION AND VENUE

2.    This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the Fair Credit Reporting Act, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.    Venue in the Eastern District of Michigan is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transact business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III.    PARTIES

4.    Plaintiff incorporates herein by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

5.    Plaintiff is a natural person who resides in Detroit, Michigan.

6.    Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7.    Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning

2

consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d)), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

8.     During all times pertinent to this Complaint, Defendant Equifax was authorized to conduct business in the State of Michigan and conduct business in the State of Michigan on a routine and systematic basis.

9.     Defendant Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Defendant Equifax regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

10.     During all times pertinent to this Complaint, Defendant Equifax acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11.     Any violations by Defendant Equifax were not in good faith, were knowing, negligent, willful, and intentional, and Defendant Equifax did not maintain procedures reasonably adapted to avoid any such violations.

12.     Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d)), to third parties. Tran Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served through its registered agent, Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

13.     During all times pertinent to this Complaint, Defendant Trans Union was authorized to conduct business in the State of Michigan and conduct business in the State of Michigan on a routine and systematic basis.

14.     Defendant Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Defendant Trans Union regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities

4

of interstate commerce, and is therefore a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

15.    During all times pertinent to this Complaint, Defendant Trans Union acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

16.    Any violations by Defendant Trans Union were not in good faith, were knowing, negligent, willful, and intentional, and Defendant Trans Union did not maintain procedures reasonably adapted to avoid any such violations.

## IV.    FACTUAL BACKGROUND

17.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

18.    The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

19.    Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

20.     The FCRA is intended to ensure consumer reporting agencies ("CRAs") exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

21.     Defendants, two the three major consumer reporting agencies (at times referred to collectively as "the CRAs," and individually as a "CRA") in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

22.     Defendants regularly purchase and obtain consumer bankruptcy information to include in consumer reports.

23.     Defendants' consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to

rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

24. Defendants obtain consumer information from various sources. Some consumer information is sent directly to Defendants by furnishers, and other information is independently gathered by Defendants from third party providers/vendors or repositories, like computerized reporting services like PACER and Lexis-Nexis.

25. Defendants regularly seek out and procure consumer bankruptcy filings and discharge information, with the intention of including it in the consumer reports. Defendants sell to third parties for a profit.

26. The diligence Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in Defendants' subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

27. Defendants' unreasonable policies, procedures, and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

28. Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in their own files.

29.     The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendants) to make lending decisions.

30.     Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, date of delinquencies contained in Defendants' reports.

31.     The information Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

32.     FICO Scores are calculated using information contained in Defendants' consumer reports.

33.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer report to calculate a person's "credit score," which is a direct reflection of their creditworthiness.

34.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

   a.   "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or

missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

b. The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

35.    Lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

36.    DTI compares the total amount a consumer owes to the total amount a consumer earns.

37.    Defendants regularly provide information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by Defendants.

38.    A consumer's income, however, is not included in their consumer report; only their "amount of debt" is. Consumers enter their income into credit

applications. Therefore, DTI is not calculated in a consumer's credit score but is a factor in credit decisions.

39.    The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms (e.g., higher interest rates and lower credit limits).

40.    A consumer who has obtained a bankruptcy discharge and has an account that is inaccurately reporting with outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting with a zero-dollar balance.

41.    Defendants are aware that the effect of a Discharge Order in Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding court, are discharged.

42.    However, Defendants also know that it is rare for a pre-petition debt to be reaffirmed or successfully challenged in an adversary proceeding.

43.    Further, Defendants know that if reaffirmation agreements or adversary proceedings exist, they will be explicitly identified on an individual consumer's bankruptcy docket sheet.

44.     Additionally, information indicating whether a specific debt was reaffirmed or successfully challenged through an adversary proceeding (rather than discharged), can be easily retrieved from the same sources from which Defendants independently obtain consumer bankruptcy case information.

45.     Defendants also receive information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

46.     Despite the availability of accurate consumer information, Defendants regularly report inaccurate information about accounts after consumers receive a Discharge Order.

47.     Defendants' unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 7 Bankruptcy.

48.     Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Defendants frequently report information regarding pre-bankruptcy debts based on information they know is incomplete or inaccurate.

49.     After a bankruptcy is discharged, Defendants also routinely rely on furnisher data, even though the furnisher has ceased updating an account upon the filing of a bankruptcy and the account information is "stale" (not updated by the furnisher since more than 90 days).

50.     Consequently, Defendants regularly publishes consumer information that conflicts with information: provided by data furnishers to Defendants, already included in Defendants' credit files, contained in public records that Defendants regularly access, or sourced through Defendants' independent and voluntary efforts.

51.     Defendants routinely report inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681e(b).

52.     Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, information provided by furnishers, and data contained in Defendants' own files.

53.     Defendants also know that failing to report the effect of a discharge on consumer account tradelines, while reflecting a bankruptcy on a credit report, would reasonably be understood to declare to the world that the consumer had been in bankruptcy but had not received a discharge of a particular account. This not only inaccurately/incorrectly reflects an outstanding debt but also would reasonably suggest to a consumer and those reviewing the consumer's credit report that the consumer was guilty of a bad act for which he/she did not deserve a discharge of a particular debt.[1]

---

[1] Indeed, a bankruptcy discharge is for the "honest but unfortunate debtor," *Grogan v. Garner*, 498 U.S. 279, 287 (1991), and will not be provided to someone who filed bankruptcy in bad faith, failed to report assets, fraudulently transferred assets, engaged in reprehensible pre-

54.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendants for their inaccurate credit reporting following a Chapter 7 discharge.

55.     Thus, Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures. More specifically, Defendants are on continued notice that their inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

*Allegations Specific to Credit Reporting of Plaintiff*

56.     Plaintiff filed for Chapter 7 bankruptcy on April 25, 2024, in the United States Bankruptcy Court for the Eastern District of Michigan (Case No. 24-44186).

57.     On August 6, 2024, Plaintiff's bankruptcy was converted to a "no asset" Chapter 7 Bankruptcy.

58.     Thereafter, Plaintiff was not personally liable for any of his dischargeable debts. Upon entry of Plaintiff's Discharge Order, all of Plaintiff's dischargeable debts had zero-dollar balances.

59.     Upon information and belief, Defendants prepared one or more consumer reports concerning Plaintiff after Plaintiff was discharged from Chapter 7 Bankruptcy.

---

bankruptcy conduct such as fraud, defalcation or embezzlement, or caused willful and malicious injury. 11 U.S.C. §§ 727(a), 523(a).

60.   The allegations in this complaint against Defendants are based on the reporting by Defendants in Plaintiff's March 20, 2025, consumer reports.

61.   Upon information and belief, Defendants obtained notice of Plaintiff's bankruptcy discharge through their routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Defendants in Plaintiff's consumer reports.

62.   In the Public Records section of Plaintiff's consumer reports, Defendants are reporting a public record of Plaintiff's bankruptcy case.

63.   Defendants also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual, or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

64.   Defendants are aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

65.   Defendants know that consumers file Chapter 7 bankruptcies to eliminate debt they cannot afford and that the "default rule" is that all debts in a

Chapter 7 are discharged unless excepted by the bankruptcy code (student loans, child support, etc.).

66.     Defendants should have reported **all** of Plaintiff's dischargeable pre-petition debts as included in or discharged in Chapter 7 Bankruptcy and/or with a zero-dollar balance.

67.     Defendants failed to report **all** of Plaintiff's dischargeable pre-petition debts as included in or discharged in Chapter 7 bankruptcy and/or with a zero-dollar balance.

68.     Defendants inaccurately reported Plaintiff's Varo Bank credit card account (the "Account"), ending with ***7932 and opened on June 21, 2023, which pre-dated Plaintiff's Chapter 7 conversion.

69.     The Account was discharged on or about August 6, 2024. Therefore, the Account should have been reported as discharged in bankruptcy and with a zero-dollar balance.

70.     However, Defendants inaccurately reported the Account with a status of "charge off," and with a balance of $424, instead of a zero-dollar balance.

71.     Further, Defendant Equifax is reporting late payments in the payment history for December 2024 and January 2025.

72.     Defendants know that the Account has not been updated since prior to Plaintiff's Chapter 7 filing.

73.     Defendants did not indicate that the Account was discharged in bankruptcy or report the Account with a zero-dollar balance, despite reporting other pre-bankruptcy accounts with zero-dollar balances.

74.     The Account was essentially frozen in time by Defendants based on a pre-bankruptcy balance and status on Defendant's March 20, 2025, consumer reports. Consequently, Defendants inaccurately reported the status and payment obligations on the Account.

75.     Defendants do not have reasonable procedures in place to detect and correct pre-Chapter 7 debts which continue to report balances after Defendants report a discharge.

76.     Defendants do not have reasonable procedures in place to detect and correct or suppress pre-Chapter 7 debts reporting balances, where Defendants are aware that the furnisher has ceased all account updates after the bankruptcy was filed.

77.     Notably, the other national consumer reporting agency, Experian, did not inaccurately report the Account such as Equifax and Trans Union did.

78.     Upon information and belief, Varo Bank (the "Furnisher") furnished information to Defendants that indicated Plaintiff's Account was included or discharged in bankruptcy, and/or had a zero-dollar balance after the bankruptcy discharge, but Defendants rejected or otherwise overrode the data they received.

16

79.    Alternatively, Defendants knew from past experiences that the Furnisher furnished inaccurate information regarding discharged debts or has historically failed to employ reasonable procedures to ensure they properly update consumer debts after a Chapter 7 Bankruptcy is discharged.

80.    Nevertheless, Defendants blindly relied on the information provided by the Furnisher even though it conflicted with information contained in Defendants' records, contradicted other information Defendants reported about Plaintiff, or neglected Defendants' knowledge regarding Plaintiff's bankruptcy and discharge.

81.    If the Furnisher did not furnish data to Defendants that the Account was discharged, Defendants' blind reliance on the Furnisher was unreasonable.

82.    Defendants were unreasonable in failing to consider the fact that since the Furnisher ceased updating the Account after Plaintiff's bankruptcy was filed, the Furnisher was an unreliable furnisher in this instance.

83.    Defendants inaccurately reported that Plaintiff owed a balance that Plaintiff did not actually owe and also reported an inaccurate account status.

84.    Defendants inaccurately reported the Account with a balance owed after the Account was discharged in Chapter 7 Bankruptcy and therefore had a zero-dollar balance.

85.    Defendants failed to indicate that the Account had a zero-dollar balance and/or was discharged in Chapter 7 Bankruptcy.

17

86.    Defendants' reporting of the Account is patently false and therefore inaccurate.

87.    If not patently false, Defendants' reporting of the Account is materially misleading and therefore inaccurate.

### *Plaintiff's Damages*

88.    Upon information and belief, had Defendants accurately reported the Account with a zero balance, Plaintiff's credit scores and/or DTI would have been better.

89.    Defendants' reporting of an additional $424 of debt which Plaintiff does not actually owe negatively increases DTI since the debt is substantially greater, but the income is unchanged.

90.    The false increased debt also negatively impacts the 30% of credit score which is based on the debt owed divided by credit limits, which impacts post-discharge consumers even more than those who have not filed bankruptcy.

91.    The inaccurate reporting by Defendants suggests to creditors that Plaintiff is guilty of a bad act and was not deserving of receiving a discharge of the Account.

92.    On September 3, 2024, October 15, 2024, and January 11, 2025, after Plaintiff's bankruptcy discharge, Plaintiff applied for a credit card with Capital One

and was denied all three times due to the inaccurate reporting of the Account by Defendants.

93.     On October 11, 2024, and November 6, 2024, after Plaintiff's bankruptcy discharge, Plaintiff applied for a credit card with JPMorgan and Chase Bank and was denied both times due to the inaccurate reporting of the Account by Defendant Trans Union.

94.     Defendants' inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to potential creditors by Defendants during the process of Plaintiff's credit applications.

95.     As a direct result of Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

96.     As a direct result of Defendants' inaccurate reporting, Plaintiff also suffers actual damages in the form of attorney's fees incurred, related to Defendants' inaccurate reporting.

97.     Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, headaches, reputational harm, violation of privacy, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

//

## V.   COUNT I

### Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)

98.   Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

99.   The FCRA requires CRAs, like Defendants, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

100.   Defendants negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of the information it reported about Plaintiff's pre-bankruptcy debts after Plaintiff received a Discharge Order.

101.   Defendants had an obligation to follow reasonable procedures to ensure they reported the bankruptcy discharge and its effect(s) with maximal accuracy.

102.   Upon information and belief, Defendants received notice of Plaintiff's bankruptcy discharge through public records, its own files, and/or information provided by data furnishers.

103.   Individual furnishers of account information also notified Defendants of Plaintiff bankruptcy, as evidenced by other tradelines in Plaintiff's consumer report showing zero balances.

104.   But despite knowledge of Plaintiff's bankruptcy, Defendants inaccurately reported the Account, which predated Plaintiff's Chapter 7 Bankruptcy, with a status other than "discharged in bankruptcy" and balances greater than zero.

105.   Defendants knew or should have known of its obligations under the FCRA, especially those pertaining to reporting discharged debt with a zero-dollar balance.

106.   These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and exemplified in prior cases involving Defendants from which Defendants are on notice of its unreasonable procedures concerning the reporting of discharged debts.

107.   Additionally, Defendants possess or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those arising after a consumer file for Chapter 7 Bankruptcy.

108.   Despite knowledge of these legal obligations, Defendants willfully and knowingly breached its duties in violation of 15 U.S.C. § 1681e(b). Accordingly, Defendants deprived Plaintiff of Plaintiff's rights as a consumer under the FCRA.

109.   Not only did Defendants have prior notice of its unreasonable procedures for reporting discharged debts, but they also possessed information from which it should have known the information reported about Plaintiff was inaccurate.

110.   Defendants knew or should have known that the effect of a Discharge Order in a no-asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

111.   Defendants know that discharged pre-petition debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero-dollar balance.

112.   Yet in this case, Defendants reported the Account, which pre-dated Plaintiff's bankruptcy, with an inaccurate status and balance owed, (instead of a zero-dollar balance) after it was discharged.

113.   Defendants intentionally ignored the fact that the Furnisher ceased updating the Account after Plaintiff's bankruptcy, which was unreasonable.

114.   Defendants know that the Account has not been updated since Plaintiff's Chapter 7, and that the reported balance, payment obligation, and status are therefore inaccurate, outdated, and have been superseded by Plaintiff's Chapter 7 discharge. Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit files/consumer reports.

115.   Defendants also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendants knew or should have known the information

22

it was reporting is inaccurate, and/or otherwise contradicted by information known by Defendants, reported to Defendants, and reasonably available to Defendants.

116.   In around 2009, Defendants implemented their own automated software "bankruptcy scrub" following the settlement agreement in *White v. Experian Info. Sols., Inc.,* No. SACV 05-1070 DOC (MLGx), (C.D. Cal. 2008).

117.   Defendants' bankruptcy scrub software identify pre-petition accounts and makes assumptions about which accounts were discharged through Chapter 7, even when the furnisher does not update the accounts as discharged.

118.   In other words, Defendants' automated bankruptcy scrubs assume Defendants' notice of a Chapter 7 discharge is in fact notice that a consumer's pre-petition accounts may be reporting inaccurately, and Defendants will overwrite data reported by a furnisher according to Defendants' assumptions and algorithms.

119.   However, Defendants have intentionally chosen to disregard knowingly inaccurate open balances and payment obligations of certain types of pre-bankruptcy accounts in Defendants' software programming of its automated "bankruptcy scrubs" it has been employing for well over a decade.

120.   Defendants' violation of 15 U.S.C. § 1681e(b) were willful.

121.   Alternatively, Defendants' violations of 15 U.S.C. § 1681e(b) were negligent.

122.   Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

123.   Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Defendants inaccurately reporting a balance for a debt that was discharged in bankruptcy, and otherwise failing to report that the Account was discharged in bankruptcy.

124.   Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, the above-referenced economic damages, emotional distress, mental anguish, humiliation, stress, loss of sleep, headaches anger, frustration, shock, embarrassment, and anxiety.

125.   Defendants are a direct and proximate cause of Plaintiff's damages.

126.   Defendants are a substantial factor in Plaintiff's damages.

127.   Therefore, Defendants are liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VI.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants for the following:

(a)   Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681e(b);

(b)   An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)    An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)    An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e)    Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f)    Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## VII.  <u>JURY DEMAND</u>

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 28th day of May 2025,

**CONSUMER JUSTICE LAW FIRM**

By: /s/ *Tarek N. Chami*
Tarek N. Chami – MI# P76407
CONSUMER JUSTICE LAW FIRM PLC
835 Mason St, Suite C349
Dearborn, MI 48124
T: (313) 447-0488
E: tchami@consumerjustice.com

*Attorneys for Plaintiff,*
*Daryl Gandy*